# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# AT NASHVILLE

| | |
|---|---|
| ROBERT DOUGLAS DUNN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>)<br>AFC, INC, AUTOMOTIVE FINANCE )<br>CORPORATION, KAR AUCTION )<br>SERVICES, INC. AND ADESA, INC. )<br>)<br>Defendants. ) | Case No. 3:11-cv-01079<br><br>Judge Trauger<br>Magistrate Judge Brown |

## INITIAL CASE MANAGEMENT ORDER

Pursuant to Local Rule 11(d)(1)(b)(2), the parties, through their attorneys of record, hereby submit the following proposed Case Management Plan.

**A.     JURISDICTION:** Jurisdiction in this case is based upon 28 U.S.C. §1331 and the Court has pendant jurisdiction over the state law claims.  Defendants deny that this Court has personal jurisdiction over Defendant KAR Auction Services, Inc. ("KAR").

**B.     BRIEF THEORIES OF THE PARTIES:**

**1.     Theory of the Plaintiff**

### Facts

Plaintiff has worked in the automobile industry for the majority if not all of his working career. Defendants hired Plaintiff on February 1, 2007, to work as a sales representative in the mid-state region, which includes parts of Tennessee, Kentucky and Alabama. In 2009, when the Defendants restructured to eliminate the sales positions, Plaintiff became a collection representative in the Nashville Office.

1

In the course of performing his job, Plaintiff was subjected to race discrimination and hostile work environment in that the branch manager, Duane Loux, would refer to a black employee as "Buckwheat". It is believed this black employee complained to human resources about this, but Plaintiff was informed by the offending branch manager that he was merely cautioned and informed "You know how these people are. Watch yourself."

Plaintiff heard Manager Loux on numerous occasions refer to blacks as "n-gg-rs" and Manager Loux would state "Don't you get nervous with all of those n-gg-rs standing around." The Knoxville branch manager would likewise use such racially inappropriate language.

After discovering Plaintiff was a liberal Democrat, Manager Loux would criticize Plaintiff's beliefs. When discussing the Presidency, Manager Engle, from the Knoxville Branch, told Plaintiff "You're the one who put Sambo in the office".

Plaintiff did not complain of this treatment because he felt this would hurt his chance for promotion with the company and he wanted to keep his job.

On December 31, 2009, Manager Loux retired. Plaintiff applied for the position of Nashville Branch Manager. After undergoing extensive interviews conducted on January 13, 2010, at the corporate headquarters in Indianapolis, Indiana, Plaintiff was hired into the position as branch manager. Plaintiff's beginning date was February 1, 2010.

Plaintiff successfully performed his job duties as the branch manager and under his supervision, the Nashville branch doubled in the amount of business on the books and the number of vehicles on the books. Plaintiff was constantly praised by the regional manager and told he was doing a great job.

In September 2010, Plaintiff was sent to Indianapolis for a training session to bring employees up to speed on a new product. This was a four day event. After the sessions, the company provided dinner for all of the employees. This was a required event.

At dinner on the first night, Plaintiff was seated at a table along with approximately ten (10) other management employees. Another employee brought up the Michael Vick dog fighting matter and stated he couldn't believe Vick didn't have any major repercussions and that Vick was coming back stronger than ever with fans and sponsors. Another employee brought up Tiger Woods and compared the treatment of Tiger Woods to Vick by the sponsors stating Tiger Woods' career is just about over and Woods didn't come out nearly as good as Vick with regard to sponsors. Plaintiff then stated that he had heard a television sports commentator opine that he thought Tiger Woods was treated so differently because he played in a predominately white sport. Plaintiff wondered aloud if this was not the case.

Approximately two nights later, after dinner, the employees were having a discussion and the Knoxville manager, Engle, pointed out the only black employee there and stated "here is our next black branch manager." Plaintiff immediately responded "Do you think so?" When all looked at Plaintiff he then stated "You know we only have one black manager    Have you seen a group photo of this company. Good luck."

Plaintiff went home on a Friday. The next week, Plaintiff returned back to work. At the end of the week, Plaintiff got a call from his regional manager and this regional manager told Plaintiff he needed to see him next week. A visit was eventually set for October 8th. On October 8th, the regional manager came to the Nashville office and told Plaintiff to come on in to the office he needed to speak with Plaintiff. He then told Plaintiff we need to get on the telephone with Indianapolis. The regional manager called Indianapolis and asked for Michelle Baker. Ms.

3

Baker got on the telephone and announced we have a problem. She then asked Plaintiff "When you were here last week, it was reported that you made some derogatory comments about the company. Did you say Tiger Woods was treated unfairly because he played in a white man's sport?" Plaintiff only admitted stating as alleged in paragraph 14 above. Ms. Baker then asked "Did you tell a black employee he would never be manager?" Plaintiff denied having made this statement and told Ms. Baker he told the black employee "good luck". Ms. Baker then told the regional manager to get Plaintiff's keys, phone and to escort him out. The regional manager then asked Plaintiff "Can you think of anything that night that would help us? This is really bad." Plaintiff reiterated that he didn't tell that employee he would never be a manager and that he would never hurt anyone's feelings, but had merely stated good luck.

On October 8, 2010, at approximately 5:30 p.m., Plaintiff received a call from the regional manager and he was told he was fired. Plaintiff filed an Equal Employment Opportunity Commission charge of discrimination against these Defendants and a right to sue letter was issued on September 9, 2011.

Plaintiff would state he was fired because he opposed the illegal actions of these Defendants in discriminating against black employees. Plaintiff was fired for his comments stating these Defendants would not promote a black employee to a manager's position.

Plaintiff was to earn commissions based on job performance, sales and collections. At the time of his termination, Plaintiff had earned commissions for the past 10 months. Plaintiff, who had to have been with the company for 1 year before receiving the commission, was wrongfully denied his commission and bonus.

## CAUSES OF ACTION

Plaintiff would state that he was discharged solely for refusing to remain silent about illegal activities being engaged in by the Defendants in violation of Tenn. Code Ann. § 50-1-304.

Plaintiff would state that these Defendants created a hostile work environment for the Plaintiff.

Plaintiff would further state that the Defendants' actions in discharging the Plaintiff are in violation of Title VII and the Tennessee Human Rights Act.

Plaintiff would state the Defendants engaged in race discrimination and retaliation in violation of both the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101 *et. seq.*, § 4-21-301 *et. seq.*, and Tenn. Code Ann. § 4-21-401 *et. seq.* and Title VII.

Defendants breached their contract with Plaintiff by their failure to pay him his commissions.

### 2. Theory of the Defendants

Defendant Automotive Finance Corporation ("AFC") received numerous complaints that Plaintiff made offensive, race-related remarks in the presence of multiple individuals. These remarks were both general, racially-offensive comments, as well as specific statements directed at a specific African-American employee. After investigating this matter and determining that Plaintiff had, in fact, engaged in racial harassment, Defendant AFC promptly terminated Plaintiff's employment due to his flagrant violation of Defendant AFC's anti-harassment policies.

Defendants deny Plaintiff's allegations. Specifically, Defendants ADESA, Inc. ("ADESA") and KAR deny that they are Plaintiff's employer. Defendants further note that the entity "AFC, Inc." does not exist; rather, the only entity that was Plaintiff's employer was

5

Automotive Finance Corporation. KAR further denies that this Court has personal jurisdiction over KAR.

All Defendants deny that any Defendant discriminated against Plaintiff based on his race or created a hostile work environment based on race. Defendant further states that any race discrimination or harassment claims must be dismissed as they are time-barred and fail under the *Faragher/Ellerth* doctrine. Defendants also note that Plaintiff's Title VII claims regarding race discrimination or hostile work environment based on race are procedurally barred as they exceed the scope of Plaintiff's EEOC Charge.

Defendants deny that any Defendant retaliated against Plaintiff for any reason; rather, Plaintiff's employment with AFC was terminated due to his own racial harassment of other employees. Defendants deny that any Defendant breached any alleged contract with Plaintiff. All actions taken with respect to Plaintiff's employment were based on legitimate, nondiscriminatory, nonretaliatory reasons, and Plaintiff is not entitled to any of the relief sought in the Complaint or Amended Complaint. As Plaintiff's lawsuit against Defendants is frivolous, Defendants are entitled to recover fees and costs.

    **C.**    **ISSUES RESOLVED: None.**

    **D.**    **ISSUES STILL IN DISPUTE: Jurisdiction, liability and damages.**

    **E.**    **INITIAL DISCLOSURES:** The parties shall exchange initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1) on or before Friday, February 24, 2012.

    **F.**    **DISCOVERY:** The parties shall complete all written discovery and depose all fact witnesses on or before Friday, September 28, 2012. Discovery is not stayed during dispositive motions, unless ordered by the court. Local Rule 9(a)(2) is expanded to allow 40 interrogatories, including subparts. No motions concerning discovery are to be filed until after

the parties have conferred in good faith and, unable to resolve their differences, have scheduled and participated in a conference telephone call with Judge Trauger.

  **G. MOTIONS TO AMEND:** The parties shall file all Motions to Amend on or before Friday, August 31, 2012.

  **H. DISCLOSURE OF EXPERTS:** The Plaintiff shall identify and disclose all expert witnesses and expert reports on or before Friday, June 29, 2012. The defendant shall disclose all expert witnesses and reports on or before Tuesday, July 31, 2012.

  **I. DEPOSITIONS OF EXPERT WITNESSES:** The parties shall depose all expert witnesses on or before Friday, September 28, 2012.

  **J. JOINT MEDIATION REPORT:** The parties shall file a joint mediation report on or before Friday, September 15, 2012.

  **K. DISPOSITIVE MOTIONS:** The parties shall file all dispositive motions on or before Wednesday, October 31, 2012. Responses to dispositive motions shall be filed within __30__ [1] days after the filing of the motion. Optional replies may be filed within fourteen (14) days after the filing of the response. Briefs shall not exceed <u>20 pages</u>. No motion for partial summary judgment shall be filed except upon leave of court. Any party wishing to file such a motion shall first file a separate motion that gives the justification for filing a partial summary judgment motion in terms of overall economy of time and expense for the parties, counsel and the court.

  **L. ELECTRONIC DISCOVERY:** If electronically stored information ("ESI") is a subject of discovery, it should be requested with as much specificity as possible to minimize the required expense. To the extent parties are responding to discovery with the production of documents or ESI, the parties shall produce documents in paper form or, where the documents

---

[1] The parties would request to discuss with the Court the date the responses will be due.

are voluminous, by making them available in paper form for inspection and review at an agreeable time and place, or by making them available in static form (e.g., a searchable pdf or TIF). The parties have taken reasonable measures to preserve potentially discoverable information.

    **M.    ESTIMATED TRIAL TIME:**

The parties expect the trial to last approximately 3-4 days.

**ENTERED** this the 10th day of February, 2012.

_____
**ALETA A. TRAUGER**
**U.S. District Judge**

**APPROVED FOR ENTRY:**

s/Ann Buntin Steiner
Ann Buntin Steiner    #11697
The Law Offices of Steiner & Steiner
613 Woodland Street
Nashville, Tennessee 37206
(615) 244-5063


s/Edward Hiland
Edward Hiland    #5778
Hiland, Mathes & Urquhart
20 Academy Place
Nashville, Tennessee 37210
(615) 251-6968

*Attorneys for Plaintiff, Robert Douglas Dunn*

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.

s/William S. Rutchow
William S. Rutchow (BPR # 17183)
Jennifer S. Rusie (BPR # 026009)
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
SunTrust Plaza, Suite 1200
401 Commerce Street
Nashville, TN 37219
(615) 254-1900
(615) 254-1908 (Facsimile)

*Attorneys for Defendants*
*Automotive Finance Corporation,*
*ADESA, Inc. and KAR Auction Services, Inc.*